O

<mark>NO JS-6</mark>

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ANGEL URIBE and GUSTAVO URIBE, | ) ) | Case No. CV 12-08351 DDP (PLAx) |
| Plaintiffs, | ) ) | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | ) ) | |
| ALL STATE CLEANING, CLASSEN ENTERPRISES INC. and CARLOS MUNGUIA, | ) ) ) | [Dkt. 38] |
| Defendants. | ) ) | |
| _____ | ) | |

Presently before the court is Defendant All State Cleaning ("All State")'s Motion for Summary Judgment.  Having considered the submissions of the parties and heard oral argument, the court grants the motion and adopts the following order.

**I.   Background**[1]

Plaintiffs Angel and Gustavo Uribe are former janitorial employees of Defendant Classen Enterprises, Inc.  ("Classen"). (Defendant's Statement of Evidence ("SOE") Ex. 2 at 100:11-14; Ex.

_____

[1] All State's motion is based solely on the issue of successor liability and, with respect to Angel Uribe, exhaustion of administrative remedies.  Accordingly, facts not relevant to those issues are omitted from the following discussion.

7 at 10:6-8.)  Classen was a franchisee of ServiceMaster Acceptance Company ("ServiceMaster"), from which Classen obtained equipment and customer lists.  (SOE Ex. B ¶ 8; Ex. C ¶ 6.)

In September 2010, Plaintiff Gustavo Uribe ("Mr. Uribe") complained to Classen manager Cecilia Cortez ("Cortez") that he was having an adverse reaction to chlorine cleaning products used at a job site.  (SOE Ex. B ¶ 12.)  Cortez instructed Mr. Uribe to use Classen's proprietary, non-chlorine product, and informed the client that Classen employees would not use bleach products.  (Id. ¶ 13.)

Later that year, Classen received reports that Mr. Uribe was arriving at job sites too early in the day, and began cleaning during the client's business hours.  (Id. ¶ 14.)  Mr. Uribe received a warning, but continued to arrive early, and was then suspended.  (Id.)  Following reports that Mr. Uribe continued to visit job sites while suspended, Classen terminated his employment on September 15, 2010.  (Id. ¶ 16.)

At the time of his termination, Mr. Uribe told manager Craig Classen that he intended to sue Classen "for discrimination, for hours, for mileage, for the mistreatment . . . ."  (SOE Ex. 2 at 173.)  Mr. Uribe could not recall mentioning the Americans with Disabilities Act, his issue with chlorine, or any allegations of racial bias during the termination meeting.  (Id.)  Mr. Uribe did testify that he told Craig Classen he intended to sue "because of my injury, the abuse, and all of that."  (Id.)

On September 19, 2010, Plaintiff Angel Uribe ("Ms. Uribe") was reprimanded for allowing Mr. Uribe to accompany her to job sites after he had been terminated.  (SOE Ex. C ¶ 10.)  At the time of

2

1   the reprimand, Ms. Uribe alleged that two other Classen employees

2   had sexually harassed her.  (Id. ¶¶ 11-12.)  That same day, one of

3   the two alleged harassers denied Ms. Uribe's allegations and

4   received a warning.  (Id. ¶ 12.)  The other alleged harasser,

5   Defendant Munguia, admitted one of the allegations, and was

6   terminated.  (Id.)  Ms. Uribe did not return calls regarding

7   Classen's disciplinary actions, and never returned to work.  (SOE

8   Ex. B ¶ 20.)

9        Soon after, on October 8, 2010, Plaintiffs filed suit in

10  Ventura County Superior Court (the "Ventura action"), alleging wage

11  claims against Classen.  (SOE Ex. 13.)  Plaintiffs later named

12  Classen managers Craig Classen and Celia Cortez ("Cortez") as

13  defendants, as well as Classen owners Ron and Claudia Classen.

14  (SOE Ex. 14; Ex. 15.)  Craig Classen and Cortez did not have any

15  ownership interest in Classen.  (SOE Ex. B ¶ 2; Ex. C ¶ 2.)  The

16  Ventura action did not include claims for discrimination or sexual

17  harassment.  (SOE Ex. 13.)  In November 2011, Classen's counsel

18  moved to be relieved as counsel, indicating that Classen would soon

19  be filing for bankruptcy.  (SOE Ex. 16.)  Ultimately, Ron and

20  Claudia Classen filed for bankruptcy, but Classen itself did not.

21  (Dec. of H.R. Martinez Exs. 12-14.)  Classen's counsel was relieved

22  on November 28, 2011.  (SOE Ex. 17.)  Since that time, there has

23  been no activity in the Ventura action, which remains pending.

24  (Id.)

25       In early 2012, Blain Bibb ("Bibb"), a ServiceMaster franchisee

26  from elsewhere in California, approached Craig Classen to discuss a

27  partnership in a new ServiceMaster franchise in Ventura.  (SOE Ex.

28  A ¶¶ 3-4; Ex. B ¶ 4; Ex. 24 at 95:15-97:8.)  In April 2012, Bibb,

Classen, and Cortez formed a limited partnership named All State
Cleaning ("All State").  (SOE Ex. A ¶¶ 5-7; Ex. B ¶¶ 5-6; Ex. C ¶¶
3-4; Ex. 19.)  Soon after, on April 13, 2012, ServiceMaster
repossessed Classen's equipment and customer lists and sold them to
Defendant All State.  (SOE Ex. A ¶ 10; Ex. B ¶ 8.)  That same day,
Classen terminated all of its employees.  (SOE Ex. A ¶ 13; Ex. B ¶
9.)  All State, who was in need of janitors in the Ventura area,
requested applications from Classen's former employees and hired
approximately 90% of them.  (Id.; Dec. of H.R. Martinez Ex. 5 at
154:9-155:21)

Immediately thereafter, All State began advertising its
services to former Classes customers.  (SOE Ex. A ¶¶ 11-12; Ex. B ¶
10; Ex. C ¶ 6.)  All State advertised itself as a new company
composed of the same cleaners and supervisors, and using the same
ServiceMaster systems, as Classen.  (Dec. of H.R. Martinez Ex. 1.)
All State required each new customer to sign a new contract, though
the terms of those contracts were identical to those between the
customers and Classen.  (Id.; Dec. of H.R. Martinez Ex. 3 at 177.)
All State successfully obtained new contracts for 90% of the
customers on the Service Master customer lists that had been
repossessed from Classen.  (Id.)

Three days later, on August 16, 2012, All State became fully
operational, and serviced Classen's previous customers at the same
locations without interruption.  (Id.; Dec. of H.R. Martinez Ex. 3
at 187:4-13; Ex. 4 at 49:16-20.)

On September 27, 2012, Plaintiffs filed suit in this court
against All State, Classen, and Carlos Munguia.  Plaintiffs' First
Amended Complaint ("FAC") alleges nine causes of action against All

State.   Based upon a successor liability theory, Plaintiffs' claims include employment discrimination and harassment in violation of both Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000 et seq.) and California Government Code §12940.   (Id.)   All State now moves for summary judgment on all claims against it.

## II.   Legal Standard

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact.   See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).   All reasonable inferences from the evidence must be drawn in favor of the nonmoving party.   See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 242 (1986). If the moving party does not bear the burden of proof at trial, it is entitled to summary judgment if it can demonstrate that "there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 323.

Once the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256.   Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on

5

1  which that party will bear the burden of proof at trial." Celotex,
2  477 U.S. at 322.  A genuine issue exists if "the evidence is such
3  that a reasonable jury could return a verdict for the nonmoving
4  party," and material facts are those "that might affect the outcome
5  of the suit under the governing law." Anderson, 477 U.S. at 248.
6  There is no genuine issue of fact "[w]here the record taken as a
7  whole could not lead a rational trier of fact to find for the non-
8  moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
9  475 U.S. 574, 587 (1986).

10     It is not the court's task "to scour the record in search of a
11  genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275,
12  1278 (9th Cir. 1996). Counsel has an obligation to lay out their
13  support clearly. Carmen v. San Francisco Sch. Dist., 237 F.3d
14  1026, 1031 (9th Cir. 2001).  The court "need not examine the entire
15  file for evidence establishing a genuine issue of fact, where the
16  evidence is not set forth in the opposition papers with adequate
17  references so that it could conveniently be found." Id.

18  **III. Discussion**

19     The parties do not dispute that Plaintiffs never worked for
20  All State, but rather for All State's predecessor, Classen.  All
21  State's motion for summary judgment is premised upon its contention
22  that the facts in the record do not support the imposition of
23  successor liability on All State for Classen's liabilities.  In an
24  employment discrimination action, the successor liability analysis,
25  derived from equitable principles, turns on three principal
26  factors: "(1) continuity in operations and work force of the
27  successor and predecessor employers; (2) notice to the successor
28  employer of its predecessor's legal obligation; and (3) ability of

1   the predecessor to provide adequate relief directly." <u>Criswell v.</u>
2   <u>Delta Air Lines, Inc.</u>, 868 F.2d 1093, 1094 (9th Cir. 1989) (citing
3   <u>Bates v. Pac. Maritime Ass'n</u>, 744 F.2d 705, 709-10 (9th Cir. 1984).
4   Of these, the second and third factors are most critical.
5   <u>Criswell</u>, 868 F.2d at 1094 (citing <u>Musikiwamba v. Essi, Inc.</u>, 760
6   F.2d 740, 750 (7th Cir. 1985).

7        A.   Notice

8        In most cases, it would be "grossly unfair" to impose
9   successor liability on a purchaser that, for lack of notice, did
10  not have the chance to protect itself against potential
11  liabilities, such as by negotiating an indemnification clause or a
12  lower purchase price reflecting the assumed risks.  <u>Criswell</u>, 868
13  F.2d at 1094; <u>Musikiwamba</u>, 760 F.2d at 750.

14       All State has submitted evidence that at the time All State
15  purchased the franchise and assets from Service Master, none of All
16  State's founding partners was aware that Plaintiffs had any claims
17  for sexual harassment or discrimination based on disability or
18  race.  (Statement of Evidence, Ex. A ¶¶ 9, 15; Ex B ¶¶ 21, 24-25;
19  Ex. C ¶¶ 14-15.)

20       Plaintiffs argue that there is a triable issue of fact
21  regarding All State's notice of Plaintiffs' discrimination claims
22  for three reasons.  First, Plaintiffs contend, All State partners
23  Craig Classen and Celia Cortez had notice that Plaintiffs had filed
24  discrimination charges with the EEOC.  (Opposition at 9.)  The
25  evidentiary support for this assertion is unclear.  Plaintiffs'
26  opposition makes no specific reference to any particular piece of
27  evidence, but appears to refer to several documents that were not
28

1  produced in discovery, which this court will not consider.[2]  See
2  Fed. R. Civ. P. 37(c).  Though All State concedes that the EEOC
3  addressed a right to sue letter to Classen in June 2012, Classen
4  had ceased operations by that time, and there is no evidence that
5  Cortez, Craig Classen, or anyone connected with All State ever saw
6  the letter.[3]  (All State SOE, Ex. B ¶ 25, Ex. A ¶ 15, Ex. C ¶ 15.)

7       Plaintiffs also appear to refer, without specific discussion,
8  to meetings Craig Classen and Celia Cortez held with Plaintiffs
9  during Plaintiffs' employment with Classen.  Plaintiffs cite to
10 various portions of deposition transcripts, not all of which are
11 included in the record.  When deposed, Cortez testified that she
12 attended a meeting at which Plaintiff Angel Uribe complained about
13 being "touched by someone" and receiving a text message.  (Martinez
14 Decl., Ex. 6 at 95:23-96:1.)  Craig Classen testified that he
15 learned of Plaintiff Angel Uribe's allegations of inappropriate
16 behavior later in 2010, when reprimanding her.  (Martinez Decl.,
17 Ex. 3 at 87:22-25.)  With respect to Plaintiff Gustavo Uribe's
18 discrimination claims, Mr. Uribe testified at this deposition that,
19 at the time of his termination, he told Craig Classen that he
20 intended to sue Classen "for discrimination, for hours, for
21 mileage, for the mistreatment . . . .," but did not specifically
22 mention any race or disability-related issues.  (SOE Ex. 2 at 173.)

24       [2] Plaintiffs also move, under Federal Rule of Civil Procedure
25 56(d), for a continuance of the instant motion and a "relaxation of
   any discovery cut-offs" to allow them to file documents that have
26 never been produced.  Plaintiffs apparently also seek to compel the
   production of additional documents, though not explicitly.
27 Plaintiffs' motion and requests are DENIED.

28       [3] The letter was addressed to Classen, care of owner Ron
   Classen.  (All State SOE Ex. 5.)

1    None of this testimony supports Plaintiffs' contention that
2  Cortez and Craig Classen knew that one or both Plaintiffs had filed
3  any charges with the EEOC.  Though Cortez, and to a lesser degree,
4  Craig Classen, were aware that Ms. Uribe had made allegations of
5  sexual harassment at one point, Classen took disciplinary measures
6  against the alleged perpetrators, including termination of
7  Defendant Munguia's employment, the same day Ms. Uribe complained.
8  Ms. Uribe never responded to Classen's attempts to contact her
9  regarding her complaint or returned to work, let alone intimated
10 that she would bring a claim for sexual harassment.  Nor could Mr.
11 Uribe's brief reference to unspecified "discrimination," alongside
12 threats of legal action "for hours, for mileage, for the
13 mistreatment," have put Craig Classen on notice of potential claims
14 for disability or race discrimination.  That ambiguity only
15 intensified when Plaintiffs soon filed the Ventura action, which
16 did not include any claims for harassment or discrimination.  At
17 the time All State formed, approximately a year and a half later,
18 Craig Classen and Cortez were not on notice of any extant
19 discrimination claims, let alone EEOC charges.
20    Second, Plaintiffs contend, without any citation to authority,
21 that All State need not have had notice of Plaintiffs'
22 discrimination claims because Bibb did not diligently investigate
23 any potential liabilities.  (Opp. at 10.)  Plaintiffs further
24 assert that Bibb did not care whether he was acquiring liabilities
25 because he was obtaining Classen's former assets at a low price.
26 (Opp. at 10:9-10.)  Plaintiffs' only support for this contention is
27 Bibb's testimony that "it was in [his] interest to go after the[]
28 abandoned clients for no cost, as opposed to pay any money for them

1    . . . ." (Martinez Decl., Ex. 2 at 80:3-5.)  That statement,

2    however in no way suggests that Bibb was indifferent to potential

3    liabilities.  To the contrary, Bibb's declaration states that he

4    would not have purchased Classen's former assets from Service

5    Master if he had known of the discrimination claims.  (SOE, Ex. A ¶

6    9.)

7         Lastly, Plaintiffs argue, again without any citation to

8    authority or evidence, that "the knowledge of Craig [Classen] and

9    Celia [Cortez] is imputed to All State under well settled agency

10   principles" because Cortez and Craig Classen were managers of both

11   All State and Classen.  As discussed above, neither individual had

12   any notice of Plaintiffs' EEOC charges.  On the record before the

13   court, no reasonable trier of fact could conclude that All State

14   had notice of the discrimination claims Plaintiffs filed with the

15   EEOC.

16        B.   Classen's Ability to Provide Relief

17        Classen's ability to provide direct relief to Plaintiffs is

18   also a critical factor in the successor liability analysis.

19   Criswell, 868 F.2d at 1094.  Successor liability may be appropriate

20   when the predecessor could have provided relief, but the successor

21   cannot, as "an injured employee should not be made worse off by a

22   change in the business." Musikiwamba, 760 F.2d at 749.  By the

23   same token, however, an employee who could not have recovered

24   against a predecessor employer should not be made better off by the

25   arrival of a new, deeper-pocketed successor.  Id.  Such is the case

26   here.  Though Plaintiffs do not specifically discuss this factor,

27   they concede that "there is no way [Classen] could provide a remedy

28   to Plaintiffs," as it was on the verge of bankruptcy and

1    dissolution.  (Opp. at 10.)  Policy considerations, therefore,

2    weigh against the imposition of successor liability.  <u>Id.</u>

3         C.   Continuity of Operations

4         Because the notice and availability of direct relief factors

5    both weigh heavily against successor liability, the court need not

6    address the continuity of operations factor.  Even assuming that

7    All State did operate as a continuation of Classen's business, that

8    is not sufficient to outweigh the other, more important factors in

9    the successor liability analysis.

10   **IV.  Conclusion**

11        For the reasons stated above, All State's Motion for Summary

12   Judgment is GRANTED.

13

14

15

16   IT IS SO ORDERED.

17

18

19   Dated: November 4, 2014

20                                        DEAN D. PREGERSON
                                          United States District Judge

21

22

23

24

25

26

27

28